HALL, Judge.
Plaintiff brought this petitory action against Mrs. Mary Cowan, widow of Albert Chalona, seeking to be declared the owner and as such entitled to the full and undisturbed possession of a narrow strip of land approximately thirty-two feet in length, having a width of approximately two and one-half feet on one end and approximately two feet on the other, which strip is more fully and accurately described in the petition.
Plaintiff alleges that Mrs. Chalona is in possession of this strip of land by reason of the fact that the rear of the building situated on her property encroaches upon *611 the rear of plaintiff’s property by the width of the strip in question. Plaintiff coupled with its petitory action a claim against Mrs. Chalona for damages for breach of contract and/or damages resulting from such encroachment in the sum of $195,742.00.
After the suit was filed but before it came to trial, the defendant, Mrs. Chalona, sold her property to Salvador Módica, Jr. and Roy P. Stubenrauch, who were subsequently made parties defendaST't© the'peti-tory action only.
Following trial on the merits judgment was rendered in plaintiff’s favor recognizing and declaring it to be the owner of the strip of land described in plaintiff’s petition and ordering the three defendants to deliver possession thereof to plaintiff. The judgment denied all claims for damages. The three defendants appealed. Plaintiff answered the appeal praying that the judgment appealed from be amended by awarding plaintiff damages against Mrs. Chalona in the sum of $195,742.00 as originally prayed for.

The Petitory Action

The record reveals that at the time suit was filed the defendant, Mrs. Chalona, owned lot 1 (sometimes described as lot 5) in Square 13 of the City of New Orleans which is an irregular shaped square bounded on the north by Decatur Street, on the east by Almonaster Avenue, on the south by North Peters Street and on the west by Spain Street. (The names of the streets bounding the square have been changed from time to time but we shall adhere to the above nomenclature.) Mrs. Chalona’s lot 1(5) fronts on Almonaster Avenue. Plaintiff claims title to and ownership of lot 9 (sometimes described as Pt. 11) which is situated in the same square and fronts on Spain Street. The lot claimed by plaintiff lies to the rear of the Chalona lot and plaintiff alleges that the building on the Chalona lot 1(5) encroaches on the rear portion of its lot 9 (Pt. 11).
At the trial plaintiff produced evidence of its title tracing same back to Bernard Marigny in the year 1811. Bernard Marigny was the owner of “Fabourg de Bernard Marigny” which included what is now known as Square 13, and is the common author of all persons owning property in this square. We have carefully examined all of the links in plaintiff’s chain of title and in our opinion plaintiff has successfully borne the burden of proving a good and valid record title to lot 9 (Pt. 11). Defendants have pointed to no flaws in plaintiff’s title to this lot. What defendants contend is that the boundary line between plaintiff’s lot 9 (Pt. 11) and the Chalona lot 1(5) has never been fixed; that plaintiff has not proved the depth of its lot and consequently has not proved its ownership of the narrow strip upon which the alleged encroachment exists by the strength of its own title but has attempted to rely on the weakness of defendant’s title to make out its ownership thereof. Of course plaintiff in a petitory action must recover on the strength of its own, and not upon the weakness of defendant’s title.
The issue presented to us is thus narrowed to the question whether plaintiff has proved on the strength of its own title that its lot 9 (Pt. 11) includes the narrow strip in dispute.
First it might be well to observe that the surveys in the record leave no doubt that plaintiff’s lot 9 (Pt. 11) is situated immediately to the rear of the Chalona lot 1(5).
Plaintiff acquired the whole of Square 13 with the exception of the Chalona lot and lot 2, (with which we are not here concerned) from the City of New Orleans by and through the Public Belt Railroad Commission by act before Robert L. Hick-erson, N. P. dated September 15, 1949. The property acquired by plaintiff is described in this act by courses and distances beginning at the corner of Spain and Decatur Streets, being the northwest corner of the square, and running thence east along *612 Decatur Street to the córner of Decatur Street and Almonaster Avenue, thence in a southerly direction along Almonaster Avenue to the northeast corner of the Chalona lot 1(5) which fronts on Almonaster Avenue, thence west along the northern boundary line of said lot a distance of 92'6"5"' to the northwest corner of said lot, thence southerly along the rear line of said lot a distance of 32'5"4"' to the southwest corner of said lot, thence in an easterly direction along the south line of said lot 1(5) a distance of 81'10"1"' to Almonaster Avenue, thence in a southerly direction along Almo-naster Avenue a distance of 32'6"7/" to the northeast corner of lot 2 which also fronts on Almonaster Avenue. The description then takes us around the perimeter of lot 2 returning to Almonaster Avenue at a point which is the southeast corner of Square 13. From this point the description takes us in a westerly direction along the south line of said square to Spain Street being the southwest corner of Square 13, thence northerly along Spain Street to the point of beginning; all of which is more fully shown by a survey of F. S. Stewart dated May 5, 1948, revised August 5, 1948, which is attached to plaintiff’s acquisition. The act recites that the property acquired is composed of a number of lots, one of which is lot 9 (Pt. 11) with which we are concerned. The individual lots which compose the property acquired by plaintiff were not surveyed but are outlined on the attached Stewart survey. However, the Chalona lot 1(5) (and also lot 2) were surveyed in order to exclude them from plaintiff’s acquisition.
From the above it is seen that plaintiff acquired all of the property surrounding the Chalona lot 1(5). It is also seen that in excluding the Chalona lot the surveyor gave it a depth on its north side of 92'6"5"' measured from its front on Almonaster Avenue, and a depth of 81'10"1'" on its south side.
No actual survey of plaintiff’s lot 9 (Pt. 11) appears in the record but all of the acts of sale in plaintiff’s chain of title describe this lot as measuring 31'9" front on Spain Street by a depth between parallel lines of 63'U"2i/2"'.
We know that plaintiff’s lot 9 (Pt. 11) lies in the rear of the Chalona lot 1(5) and that plaintiff owns all of the land between the rear of the Chalona lot and Spain Street.
By adding "the title depth of plaintiff’s lot 9 (Pt. 11) to the surveyed depth from Almonaster Avenue of the property excluded from plaintiff’s acquisition we find the width of Square 13 between Spain and Almonaster Avenue at the level of the north line of the Chalona lot 1(5) to be 156'5"7i4'" (63'11"2i/2"' plus 92/6"5"'). By the same method we find the width of Square 13 at the level of the south line of the Chalona lot to be 145'9"3i4w (63Tl"2i4'" plus 81'10"1'").
The title depth of the Chalona lot 1(5) is 92,2"0along the north line of the lot and 82,0"0/" along its south line. If we add the title depth of plaintiff’s lot 9 (Pt. 11) to the title depth of the Chalona lot 1(5) we find the width of Square 13 to be 156'l,/2.i4w at the north line level of lot 1(5). Thus the width of the square at this level as calculated in the preceding paragraph is approximately 4" greater than the width of the square as shown by the titles to the two lots.
As explained in the testimony this 4" overage was added to the depth of the Chalona lot in Mr. Stewart’s survey of 1948. This survey gave a measured depth of 92'6,,5"/ to the lot instead of its title depth of 92'2"0"'.
The Stewart survey of 1948 gives the south side line of lot 1(5) a measured depth of 81'10'T"' which is approximately 2" less than its title depth (82,0"0/") along this line. Subsequent surveys by Mr. Guy J. Seghers however show that the measured depth along this line is 82T"1'" which is slightly more than the title depth.
*613 We have to determine whether the rear of the building on the Chalona lot 1(5) encroaches on the rear of plaintiff’s lot 9 (Pt. 11). As we have seen after giving the overage in the width of the square to the Chalona lot, its northwest corner is fixed at a measured distance of 92'6"5'" from Almonaster Avenue and its southwest corner is located at a measured distance from Almonaster Avenue of 81'10"lw according to the Stewart survey of 1948 attached to plaintiff’s acquisition, and that plaintiff acquired all of the property in Square 13 lying west or to the rear of the line connecting these two corners.
By reference to plaintiff’s Exhibit No. 23 being a survey by Guy J. Seghers, C. E. and Surveyor, dated June 9, 1965, it is seen that the sides of the building on the Chalona lot extend beyond the lot’s measured depth from Almonaster Avenue, a distance of 1'9"4W on the north side and 2'6"4'" on the south side. Thus the rear of the Cha-lona building occupies the narrow strip which is claimed by plaintiff in this peti-tory action.
This is confirmed by reference to the sale (plaintiff’s Exhibit No. 25) of lot 1(5) by Mrs. Chalona to Módica and Stubenrauch passed during the pendency of this suit. In this act lot 1(5) is described as having an actual depth on its north side of 94'9"5'" (title depth 92/2"0///) and an actual depth on its south side of 84'7//5/// (title depth 82'0"0'") as per plan of F. G. Stewart, surveyor, dated May 17, 1967 attached thereto. This is the same surveyor whose survey of May 5, 1948, revised August 5, 1948, is attached to plaintiff’s acquisition and which shows lot 1(5) as having an actual depth on its north side of 92'6"5/" and an actual depth on its south side of 81'10"1'". Plaintiff’s expert surveyor, Mr. Guy J. Seghers, testified that this discrepancy is due to the fact that in his 1967 survey Mr. Stewart measured the depth to the rear of the building. Mr. Stewart was on a trip around the world and was unavailable to testify.
For the foregoing reasons we are of the opinion that plaintiff has proved its ownership by good record title to all the property lying between the rear of the Chalona lot 1(5) and Spain Street including the strip in question here without reliance upon any weakness in defendant’s title. We are of the further opinion that the building on the Chalona lot 1(5) encroaches upon plaintiff’s property to the extent of this strip.

Damages For Breach of Contract

Plaintiff claims damages in the sum of $195,742.00 for breach of contract “and/or damages resulting from such encroachment.”
The record reveals that lot 1(5) was formerly owned by Albert Chalona & Co., a partnership composed of Albert Chalona and John Stanton. Albert Chalona acquired Stanton’s interest in the partnership and later died leaving as his sole heir his surviving wife in community, Mrs. Mary Cowan Chalona, who accepted his succession unconditionally. Plaintiff’s claim for damages for breach of contract is against Mrs. Chalona only.
The record further reveals that about the year 1954 plaintiff leased to Albert Chalona & Co. that portion of its property fronting on Almonaster Avenue lying between the south side line of lot 1(5) and the corner of North Peters Street. (By this time plaintiff had acquired lot 2.) The rear boundary of the leased property was described only as “the property presently leased by lessor to Wilson C. Bourg & Son Lumber Company.” Albert Chalona & Co., with plaintiff’s permission, constructed a building on this leased property leaving a small space between this building and the south line of lot 1(5).
In 1955 Albert Chalona & Co. acquired title to lot 1(5) and being desirous of erecting a building thereon addressed a letter to plaintiff dated May 28, 1956 (plaintiff’s Exhibit No. 26) seeking permission *614 to build to the edge of the division line between lot 1(5) and the property it had leased from plaintiff and to join this prospective building to the building it had erected on the leased premises. In response to this request plaintiff addressed a letter to the Chalona Company which reads as follows:
“New Orleans, Louisiana
May 30, 1956
“Albert Chalona & Co.
400 Almonaster Avenue
New Orleans, Louisiana
“Dear Sir:
We own the property that surrounds your lot on three sides, in the Square No. 13 of the Third Municipal District of this City, bounded by Almonaster Avenue, Spain, North Peters and Decatur Streets.
We hereby authorize you to construct a masonry wall along the dividing line of your property from our property, provided it is done in accordance with the requirements of the building code and ordinances of the City of New Orleans.
Should we at a later date construct improvements adjoining your property, it is understood that we will be permitted to tie into this wall, without paying therefor.
Yours very truly,
DUPUY STORAGE AND FORWARDING CORP.
By: (sgd) John Dupuy, Jr.
We agree to the terms of the above authorization and agreement.
(sgd) Albert Chalona
Albert Chalona”
The above quoted letter is the agreement for the alleged breach of which plaintiff seeks damages.
It is clear to us that this agreement has reference to the side line wall of the Chalona building only and contains no agreement or reference to the rear wall of the building. Since plaintiff is seeking damages for the encroachment of the rear wall only, any breach of the contract declared upon is totally irrelevant to the issue and no damages can be predicated thereon.

Damages Resulting From The Encroachment

Plaintiff prayed for damages in the sum of $195,742.00 for breach of contract and for failure to remove the encroachment of the rear wall. Plaintiff, as we have seen, is not entitled to damages for breach of contract. What damages, if any, is plaintiff entitled to as a result of the encroachment?
Plaintiff shows that in the fall of 1963 it planned to erect a warehouse on several *615 of its lots facing Spain Street, including its lot 9 (Pt. 11). This building was to be ninety feet in width and its rear wall was planned to be placed on the rear line of these lots. In November 1963 plaintiff notified Albert Chalona in writing of the encroachment of his building on the rear of its lot 9 (Pt. 11) and requested that he remove the encroachment so that it might proceed with its plans. In January of 1964 plaintiff gave Chalona written notice to remove the encroachment by March 31, 1964. The encroachment was not removed.
Instead of first securing a judicial determination of the title question involved plaintiff commenced construction of its warehouse in the fall of 1964, placing the entire rear wall thereof nearly three feet inside or west of the rear property line claimed by it thus clearing the rear wall of the Chalona building and leaving a small space between the two walls. Plaintiff claims that this was done in order to minimize the damages caused by Chalona. It would appear to us, on the contrary, that plaintiff’s action caused the economic loss of which it complains.
Plaintiff itemized its damages as follows:
1. Damages for delay in construction from May 25, 1964 to November 15, 1964 at $250.00 per day $ 43,250.00
2. Economic loss of a strip of land two and one-half feet wide and extending the whole ninety foot width of its building based on a $247.82 monthly loss of revenue from this strip for the fifty year life of its building $148,692.00
3. Cost of fire wall construction $ 3,800.00.
We will not discuss plaintiff’s damage claims in detail. The proof of items 1 and •2 consists entirely of speculation and conjecture. Item 3 is based upon an alleged breach of the contract sued on by plaintiff. Moreover, the only proof adduced as to this item was pure hearsay.
We are of the opinion however that plaintiff has been damaged to some extent.
We are of the opinion that plaintiff is entitled to damages equal to the fair rental value of the property enclosed by defendant. See West’s Louisiana Digest verbo “Real Actions”, <®=38(4).
The record reveals that Albert Chalona’s possession and occupancy of the strip in question here was with plaintiff’s consent until March 31, 1964 and that thereafter Chalona was a possessor in bad faith within the meaning of LSA-C.C. Art. 3452. His own acquisition (Plaintiff’s Exhibit No. 34) is proof of his bad faith.
Since the record contains no proof of rental value the case will be remanded in order to permit plaintiff to make such proof, if it can.
For the foregoing reasons the judgment appealed from is affirmed insofar as it recognized plaintiff as the owner of the property therein described and ordered all three defendants to deliver possession thereof to plaintiff. The judgment is annulled insofar as it dismissed plaintiff’s claim for damages against Mrs. Mary Cowan Chalona and the cause is remanded to the Trial Court with instructions to hear proof of and determine from such evidence as may be presented the fair rental value of the strip of land described in said judgment and thereafter to render judgment in plaintiff’s favor against Mrs. Mary Cowan Chalona for such fair rental from March 31, 1964 until possession of the strip is delivered to plaintiff; costs of this appeal and costs incurred to date in the District Court to be borne in equal proportions by appellants and appellee, all future costs to await final determination of the cause.
Judgment affirmed in part, annulled in part and cause remanded with instructions.