STOKER, Judge.
This matter has previously been before this court as reported in 347 So.2d 1176, and it has been considered by the Louisiana Supreme Court in 356 So.2d 411 (La.1978). The facts are stated in the reports of both cases. The case involves conflicting claims of plaintiffs, Alton M. Folse and Frank M. P. Deville, and the State of Louisiana through the Department of Highways as it was then known. Originally brought as a possessory action, the action was converted into a petitory action by the State. Neither the trial court nor the Court of Appeal reached the title issue. Both treated the matter as an injunction case but incidentally held plaintiffs had not proved their possession. The Supreme Court granted writs and subsequently held that neither plaintiffs nor the State held title to the land in question but that plaintiffs held possession of the land. Therefore, plaintiffs were “entitled to some type of monetary compensation for the disturbance of their possession by defendants.” The case was remanded to the trial court for the purpose of fixing the amount due plaintiffs as “there is insufficient evidence in the record of the value of their possessory interest upon which to base an award of damages.”
On remand from the Supreme Court the trial court conducted a trial and awarded *DXCII plaintiffs 75% of the estimated value of the land in question. This land, as is more fully explained in the case reports cited above, is a strip of land lying along Louisiana Highway 107 in Pineville, Louisiana. It lies between property owned by plaintiffs fronting on the highway and what purported to be the highway right-of-way. Each plaintiff owns his own tract, but they are in close proximity to one another. Assuming that the State owned the right-of-way over the strip, the Department of Highways proceeded with plans to improve the highway which required that they use a portion of the strip of land. Plaintiffs claimed ownership of the portions of the strip in front of their properties, but the Department ignored their pretensions. In plaintiffs’ pos-sessory action, the relief sought was an injunction and damages. It was later converted into a petitory action in which, as stated above, the Supreme Court held neither plaintiffs nor the State held title. On the other hand, the Supreme Court noted that, although the trial court judge who heard the injunction phase of the case found plaintiffs proved possession (first granting the injunction and then recalling it), the final trial court judge and the Court of Appeal acted on the case as though the trial court judge who heard the injunction had found that plaintiffs were not in possession. Therefore, plaintiffs lost on all points before the trial court judge who heard the case on the merits and the Court of Appeal. The Supreme Court found there was adequate evidence to support a finding that plaintiffs had possessed portions of the strip in question.[1]
Because the Department of Highways disturbed plaintiffs’ possession through the work of improvement, the Supreme Court held compensation was due plaintiffs under LSA-R.S. C.C.P. art. 3662(3). In its opinion the Supreme Court stated the following:
However, plaintiffs are not entitled to be compensated for the full value of the land, as in an expropriation proceeding; rather, the measure of their damages should be the value of their possession of the property, subject to preemption by the. true owner in a petitory action.
The defendant department has set forth its specification of errors as follows:
SPECIFICATIONS OF ERROR
I. The Court erred in its computation of the amount of square footage actually taken by the Department in this matter since it computed this square footage on the basis of required right of way rather than on the actual area taken and used by the Department in construction of the roadway improvements.
II. The court erred in equating the value of the plaintiffs’ right-of possession subject to preemption by the true owner to that of an owner who is forced to grant a servitude for a pipeline and thus granted to plaintiffs an excessive amount of damages.
In essence what the appellant, Department is contending in specification one is that what they actually used in the improvement was less than earlier estimates which became part of the evidence in the first trial. In the second contention the Department simply urges that the trial court erred and over valued the plaintiffs’ right of possession.
MEASURE OF THE AREA OF POSSESSION DISTURBED
The trial court evidently found that the Department of Highways took 8,650.40 square feet of property possessed by plaintiff Deville and 4,400 square feet of property possessed by plaintiff, Folse. The Department contends it should be 4,400 square feet for Deville and 3,261 square feet for Folse.
This issue is not free from ambiguity. The reasons for judgment assigned by the *DXCIII trial court make no findings on this issue, and it is not mentioned. It was made an issue at the trial on remand from the Supreme Court, however. The trial judge did use the figures of 8,650.40 square feet for Deville and 4,400 square feet for Folse because they are spelled out in the formal judgment as the basis for his monetary award. In the trial court on remand the plaintiffs offered no evidence as to the total area encompassed in the area of disturbances. Plaintiffs relied upon testimony and evidence adduced at earlier phases of the litigation at the trial level.
At the trial on remand the Department evidently recognized that the evidence at the earlier stages of the litigation had indicated that the Department planned to utilize 8,650.40 square feet and 4,400 square feet. In this appeal we do not have before us the record of trial for the stages which preceded the remand. However, by implication, if not by outright admission, the Department concedes that the earlier trial evidence reflects the higher square footage figures. To counter this evidence, and to establish that the Department actually utilized (and therefore disturbed) less square footage, the Department called Mr. Philip Holland, a licensed land surveyor employed by the Department, now known as the Louisiana Department of Transportation and Development.
Mr. Holland testified from two sheets identified as Highway 2 and 2A consisting of project plans for Louisiana Highway 107. These are printed from aerial photographs upon which the highway engineers have drawn lines to represent the route, limits and other data pertaining to the planned improvement. They are dated January 14, 1974.
The sheets contain two lines paralleling Louisiana Highway 107 as it existed prior to improvement. One is labeled “Required Right-of-Way”, and the other is labeled “Limits of Construction”. On the sheets the line showing the limits of construction is closer to the center line of the highway than the line showing the required right-of-way. Mr. Holland sought to explain the meaning and difference between these terms. While his testimony is not too clear, it is reasonably clear that, irrespective of what “Required Right-of-Way” may mean, the term “Limits of Construction” means that no construction or other activity is expected to be conducted beyond the line so marked. Plaintiffs’ counsel objected when Mr. Holland was requested by the Department’s counsel to state his calculations as to the area lying between the outer limits of the old highway (back slope of ditches) and the line marking the limits of construction. Plaintiffs’ objections were based on the contention that the question of the area utilized by the Department had already been determined through testimony of Department personnel at the earlier trial stages, and testimony could not now be admitted to vary the evidence already before the court. It was urged that the matter was res judi-cata.
The trial court heard argument on the issue and admitted the testimony subject to the objection. Mr. Holland then gave his figures of 4,400 square feet of land used which had been possessed by Deville and 3,261 square feet which had been possessed by Folse. Mr. Holland testified that he supervised the work on the plans and signed them. Quite evidently the plans were made before the construction was started. Significantly, Mr. Holland never did testify that the construction was actually confined within the limits of the line marked “Limits of Construction”. Also there is no evidence that he actually knew whether or not the work did stay within such limits.
In the brief filed on behalf of plaintiffs, counsel contends that the square footage figures utilized by the trial court were derived from the following. At earlier stages of the trial, before appeal and consideration of the case by the Supreme Court, Department representatives testified the improvement project would require twenty-two additional linear feet measured perpendicularly from the outer limits of the old right-of-way occupied by Louisiana Highway 107, that is, the outer limits before any construction was begun. Multiplying twenty-two *DXCIV feet times the 200 foot frontage of the Folse property yielded an area of 4,400 square feet. The same process applied to the Deville property, which had a frontage of 393.20, yielded 8,650.40 square feet. By sealing the sheets marked 2 and 2A in evidence in the record before us, the frontage figures used appear to be correct.
In the absence of any evidence that the highway, as eventually improved, did not require the full twenty-two feet, we do not feel that the trial court was clearly wrong in accepting the plaintiffs’ contentions as to the area actually covered by the disturbance and rejecting the contentions of the defendant Department that a lesser area was actually used. Accordingly, we accept the trial court’s resolution of this issue of fact.
ESTABLISHING THE VALUE OF PLAINTIFFS’ POSSESSION
It was stipulated on behalf of the parties that the value of the property in question here in full or perfect ownership was $1.00 per square foot if it was deemed commercial property and forty-five cents if the property was deemed residential. The Folse property was being devoted to use as a service station at the time the Department began its improvement project. Another service station has since opened up next to the Folse station. Also, the Deville property has been sold by him to owners who have opened up a tire center and a service center. The trial court evidently considered the property as commercial, as he awarded plaintiffs seventy-five cents per square feet for the property affected by the disturbance.
The principal controversy under specification number two is over the method or approach used by the trial court to evaluate the disturbance of possession. In its reasons for judgment the trial court stated that it was “of the opinion that the disturbance of possession in this case is similar to a situation where a landowner of residential property is forced to grant a servitude for a pipeline.” The trial court further stated that the “rule-of-thumb for the value of a pipeline servitude on residential property is 75% of the value of the land.” For this proposition the trial court cited the cases of Texas Gas Transmission Corp. v. Hebert, 207 So.2d 368 (La.App. 3rd Cir. 1967); Texas Gas Transmission Corp. v. Broussard, 196 So.2d 620 (La.App. 3rd Cir. 1967); and Colonial Pipe Line Co. v. Babineaux, 154 So.2d 594 (La.App. 3rd Cir. 1963).
As noted above in the quotation from the Supreme Court’s opinion in this matter, this is not an expropriation case. For this reason the Supreme Court stated that plaintiffs were not to be compensated for the full value of the land. The Supreme Court said: “rather, the measure of their damages should be the value of their possession of the property, subject to preemption by the true owner in a petitory action. Cf. Dupuy Storage and Forwarding Corporation v. Cowan, 216 So.2d 610 (La.App. 4th Cir. 1968).” (Emphasis supplied) It will be noted that the Supreme Court used the word “damages” rather than “compensation”. In holding that plaintiffs were entitled “to some type of monetary compensation for the disturbance of their possession by defendants” the Supreme Court cited LSA-C. C.P. art. 3662(3). Paragraph (3) under that article provides for award of damages to a successful plaintiff in a possessory action.
Under the facts of this case the disturbance of plaintiffs’ possession is permanent. As the Supreme Court noted plaintiffs’ possession was subject to preemption by the “true owner” in a petitory action. However, plaintiffs are not being restored to possession as would ordinarily be the case under LSA-C.C.P. art. 3662(1). Consequently, the assignment of value of plaintiffs’ possession, which they have lost, but which is subject to preemption partakes of a highly subjective quality. Despite the precarious nature of the possession plaintiffs formerly exercised, there may be considerable doubt as to whether title claimants would ever have come forward or could have prevailed against plaintiffs in a petitory action. Hence, plaintiffs conceivably could have been possessed forever without challenge to their possession.
*DXCV In an effort to approach valuation of the possession involved here, plaintiffs called an experienced expert appraiser. Despite the long years of experience of plaintiffs’ expert, he candidly admitted he had no experience in appraising a right such as that involved. He testified that, based on the old saying that possession is nine tenths of the law, the possession in this case should equal 90% of the value of full ownership.
The defendant Department also called an expert appraiser who used a rental approach. This appraiser came up with a value of two cents per square foot as opposed to ninety cents per square foot assigned by plaintiffs’ appraiser. The Department urges that the rental approach should be followed because the Supreme Court cited Dupuy Storage and Forwarding Corporation v. Cowan, supra, following its statement of the measure of value. In that case, following a petitory action which determined that plaintiff owned a narrow strip of land between plaintiff and defendant, and that defendant’s building encroached upon it, defendant was ordered to deliver possession. On appeal this action was affirmed, but the denial of damages was reversed. The case was remanded to the trial court for assessment of damages. The Court of Appeal expressed the opinion that defendant’s occupancy of the strip should be compensated in damages “equal to the fair rental value of the property enclosed by defendant.” The trial court was instructed on the remand to determine the fair rental value. The Supreme Court’s citation to the Dupuy case was preceded by the symbol “Cf” meaning to compare. The booklet entitled A Uniform System of Citation, copyrighted in 1976 and published by the Harvard Law Review Association gives the following meaning of the symbol Cf. (page 7):
Cf.: Cited authority supports a proposition different from that in text but sufficiently analogous to lend support. Literally, “cf.” means “compare.”
We are not convinced that the Supreme Court meant to direct, in referring to the Dupuy case as it did, that the rental approach should be resorted to. Moreover, the cases differ. In Dupuy possession was restored to plaintiff, and defendant was to pay the rental value of space occupied by a building in the past for a specific time. In the cases of Folse and Deville, their disturbance began at the time the highway improvement commenced and will continue because the land used in the improvement will not be available to plaintiffs. In any event we are not persuaded that the method used by the Department’s appraiser to arrive at the rental value is entitled to great weight. Like plaintiffs’ appraiser, defendant’s appraiser had never attempted to make an appraisal of this nature before and knew of no precedents.
In our opinion the very wide disparity between the appraisals, 90% as against 2%, illustrate that they are of less value in approaching a problem of this nature than in the ordinary appraisal task. Under the circumstances we think considerable discretion should be allowed the trial court in fixing the value. Its valuation of 75% of ownership values does not strike us as clearly wrong. The cases cited by the trial court, which involve pipeline servitudes expropriated, provide about as close an analogy as one might find to the situation involved here.
For the foregoing reasons we will not disturb the trial court’s assignment of 75% of full market value of the areas in question as damages due plaintiffs. There are no complaints concerning any other portion of the lower court’s judgment, therefore it will be affirmed as rendered. Costs of this appeal will be assessed to defendant insofar as they are legally authorized.

AFFIRMED.

. The injunction phase of the litigation passed out of the case at the Supreme Court level and is not an issue here.